## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES KELLY, | : | Civil Action No.: 2:24-cv-06701 |
| *Plaintiff*, | : | |
| v. | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| *Defendants.* | : | |

## ORDER

**AND NOW**, this            day of                     , 2025, upon consideration of the Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss filed on behalf of Defendant Detective Frank Jastrzembski, the Memorandum of Law in support thereof, and any response thereto, it is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED**.

It is further **ORDERED** that all claims set forth in the Complaint against Defendant Detective Frank Jastrzembski are hereby **DISMISSED WITH PREJUDICE**.

**BY THE COURT**:

_____
Hon. JOHN F. MURPHY

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMES KELLY, | : |
| *Plaintiff*, | : Civil Action No.: 2:24-cv-06701 |
| | : |
| v. | : |
| | : |
| CITY OF PHILADELPHIA, *et al.*, | : |
| *Defendants*. | : |
| | : |

## CIVIL RULE 12(b)(6) MOTION TO DISMISS
## FILED ON BEHALF OF DEFENDANT DETECTIVE FRANK JASTRZEMBSKI

Defendant Detective Frank Jastrzembski,[1] by and through the undersigned counsel, Marshall Dennehey, P.C., Joseph J. Santarone, Jr., Esquire and Joshua W. Brownlie, Esquire respectfully moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for dismissal of the Complaint filed on behalf of Plaintiff James Kelly, and requests this Honorable Court enter the proposed Order for the reasons set forth in the attached Memorandum of Law, incorporated herein by reference.

Respectfully Submitted,

**MARSHALL DENNEHEY, P.C.,**

BY: _____
JOSEPH J. SANTARONE, JR.
JOSHUA W. BROWNLIE
PA Attorney ID Nos.: 45723, 330511
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2626

*Attorneys for Defendant*
*Detective Frank Jastrzembski*

Date: April 4, 2025

---

[1] Incorrectly named Detective "Jastrembski."

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES KELLY, | : | Civil Action No.: 2:24-cv-06701 |
| *Plaintiff*, | : | |
| v. | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| *Defendants.* | : | |

## MEMORANDUM OF LAW
## IN SUPPORT OF THE CIVIL RULE 12(b)(6) MOTION TO DISMISS
## FILED ON BEHALF OF DEFENDANT DETECTIVE FRANK JASTRZEMBSKI

Detective Jastrzembski, by and through the undersigned counsel, respectfully moves for dismissal of the Complaint pursuant to Civil Rule 12(b)(6), and requests this Honorable Court enter the proposed Order for the reasons set forth more fully below.

### INTRODUCTION

Plaintiff James Kelly may have walked out of prison a free man, but he did so on a narrative crafted entirely by one side of the story—a story in which prosecutors reversed course, declared his conviction an error, and portrayed him as the innocent victim of a grand miscarriage of justice. However, when you peel back the carefully curated layers of hindsight, what you find isn't evidence of a frame job or police misconduct; it's decades-old, evolving eyewitness statements, a prosecution based on live testimony, and a case that turned on facts now conveniently discarded by the same District Attorney's Office that once secured Mr. Kelly's conviction. Now, relying on this revisionist view, Mr. Kelly seeks civil damages—despite the lack of any plausible claim that Defendant Detective Frank Jastrzembski fabricated evidence, suppressed material information, or violated clearly established constitutional rights. The claims should be dismissed.

## ALLEGATIONS

Two Black men murdered Travis "Bud" Hughston on New Year's Day of 1993. *See* Compl., ECF 1 at ¶21. In August of 1996, a jury determined Plaintiff James Kelly was one of the killers and convicted him of first-degree murder. *Id.* at ¶¶41, 45. However, the current administration of the Philadelphia District Attorney's Office ("DAO") has since concluded otherwise. *Id.* at ¶1. In 2024, the DAO confessed error in Mr. Kelly's prosecution and "urged" the First Judicial District of Pennsylvania to vacate his conviction—and it did. *Id.* at ¶¶1, 60. The DAO then secured dismissal of all charges. *Id.* at ¶¶60, 86. On a one-sided narrative, Mr. Kelly walked out of prison a free man on July 18, 2024. *Id.* at ¶60. He now seeks civil recovery.

On January 1, 1993, Hughston spent the evening watching football with Tamika Ledbetter and George Patterson at 2000 N. Bambrey Street in Philadelphia. *See* Compl., ECF 1 at ¶26. He and Ledbetter were romantically involved. *Id.* In a statement provided to Defendant Detective Mae, Ledbetter explained that just shortly after parting ways with Hughston, she heard three gun shots outside the residence. *Id.* She opened her door and saw a Black male in a black skull cap and a 3/4 length trench coat running toward Glenwood, putting a gun in his waistband. *Id.* Ledbetter watched him enter a white vehicle, drive toward Diamond Street, and turn onto Glenwood. *Id.* She then noticed Hughston lying on the ground about two houses away,. *Id.* The perpetrator drove past Ledbetter on Diamond Street accompanied by another man in the car. *Id.*

On the night of the murder, eye-witnesses Collie Baxter and Ernestine Willaims both provided statements to police.[2] *See* Compl., ECF 1 at ¶¶23, 29. Defendant Detective Dougherty

---

[2] This statement from Williams is undated. *See* Compl., ECF 1 at ¶29. Mr. Kelly explains that "[in] PCRA filings, both the Commonwealth and [his] defense counsel *assumed* this interview took place on January 1, 1993." *Id.* at ¶29 n.1 (emphasis added). This, despite any corroborative factual support or post-conviction evidentiary hearing. Nevertheless, Detective Jastrzembski accepts the assertion as true at this stage of the proceeding.

took the statement from Baxter. *Id.* at ¶23. Baxter explained he heard gunshots at 25th and Diamond Streets, then saw a Black man in his twenties—wearing a black trench coat and dark hat—run to a white, two-door car and drive away. *Id.* A second, thinner Black male in a blue sweatsuit then emerged from a nearby alley and got into the passenger seat. *Id.* Baxter stated he made eye contact with both men as they sped away. *Id.*

Williams had a different perspective. *See* Compl., ECF 1 at ¶29. Defendant Detective Reinhold took the statement from Williams. She told Detective Reinhold that her car broke down in front of her house at 2023 N. Bambrey Street. *Id.* Sometime later, a gray station wagon parked nearby, and a young Black male—Hughston—exited. *Id.* She asked him for a jump, but he walked into the Ledbetter house instead. *Id.* Williams then went into her house and upstairs to her bedroom. *Id.* About thirty minutes later, she heard gunshots and saw Hughston lying on the ground with Ledbetter crying beside him. *Id.* Williams allegedly denied seeing the shooting, anyone with a gun, or anyone fleeing the scene. *Id.*

A few weeks later, on January 22, 1993, Detective Reinhold interviewed Hughston's brother, Kenyatta. *See* Compl., ECF at ¶52. Though, Kenyatta did not witness the crime and therefore had little information. *Id.*

Detective Reinhold and Defendant Detective Collins took a second statement from Williams on March 21, 1993. *See* Compl., ECF 1 at ¶30. Williams expanded on her original statement to include information that she witnessed the shooting from her bedroom window and spoke with the two assailants beforehand. *Id.* at ¶¶30-31. She described the first assailant as a Black male, 5'7", about thirty-one years old, with a dark complexion, and wearing a 3/4 length black coat, and the other assailant as a 5'11" to 6'1", thirty-three year old Black male wearing a beige cashmere coat. *Id.* at ¶31.

Williams stated that after seeing the two men earlier in the evening, she observed them from the window of her second-story bedroom, sitting on the corner with a teenage neighbor, Devon Gilliard. *See* Compl., ECF 1 at ¶31. She explained Hughston briefly left the Ledbetter house to retrieve something from his car, then returned. *Id.* About ten minutes later, he came out again and handed a brown bag to the man in the black coat, who then shot Hughston in the ear and face before fleeing through an abandoned house. *Id.* Gilliard and the man in the beige coat fled down Page Street to Glenwood Avenue. *Id.* Williams apparently denied seeing any of the three men get in or out of a car that evening. *Id.* She mentioned seeing the man in the beige coat two days after the shooting and exchanging greetings with him. *Id.* But, Williams informed Detectives Reinhold and Collins that she had not seen the shooter since the murder. *Id.*

The investigation then began to narrow. Williams provided a third statement on September 14, 1993. *See* Compl., ECF 1 at ¶32. She now was able to identify the shooter, since she had begun purchasing drugs from him shortly after the murder. *Id.* His name was "Larry." *Id.* Williams also learned that the second assailant, the man in the beige coat, often stays at a house on 24th Street and lives in the Johnson Home Projects. *Id.* The next day, Williams was shown two photo arrays—one with Larry Mullins and one with Mr. Kelly. *See* Compl., ECF 1 at ¶33. Though, the photograph of Mr. Kelly was taken in 1978, fifteen years beforehand. *Id.* Williams identified Mullins as the shooter and Mr. Kelly as "the guy with Larry that killed Travis Hughston[,]" adding she had seen Mr. Kelly earlier at his brother's wedding at 21st and Diamond. *Id.* Her identifications were memorialized in a fourth statement. *Id.*

Approximately one month later, Defendant Detectives Snell and Divarina presented a photo array to Baxter on October 13, 1993. *See* Compl., ECF 1 at ¶24. After confirming he had no additional information beyond his initial statement, Baxter identified Mullins as the man who,

after the gunshots, ran from the alley and entered the passenger seat of the "tan Corolla." *Id.* at ¶¶24, 34.

On July 5, 1995, Defendant Detectives Gross and Lubiejewski took a fifth statement from Williams. *See* Compl., ECF 1 at ¶35. There, Williams reiterated the information contained in her second and third statements. *Id.* She then explained that on the night of the murder, she witnessed Mr. Kelly pass a gun to Mullins just before the shooting. *Id.* Williams was presented again with two photo arrays by Detectives Gross and Lubiejewski, from which she once more identified Mullins as the shooter, and Mr. Kelly as the man who passed the gun. *Id.* But, "[n]o interview record form 75-483 or activity sheet reflecting this interview was produced in pretrial discovery[.]" *Id.* Instead, the substance of Ms. Williams' fifth statement was gleaned from an Affidavit of Probable Cause ("AOPC") sworn out by Detective Gross the day after Williams' interview. *Id.*

On January 6, 1995, Detective Gross swore out an AOPC citing information provided by Williams, Baxter, and Ledbetter. *See* Compl., ECF 1 at ¶¶35, 36. In addition to the information gathered during Williams' most recent interview, the APOC set forth summaries of the information provided by Baxter and Ledbetter. *Id.* The summary related to Ledbetter's statement reported that she saw a Black male in a long black coat put a gun in his waistband and get into the driver's seat of a white car. *Id.* The summary related to Baxter's statements explained he saw two men run from the scene—one from a small street, the other from an alley—and get into a white car after hearing gunshots. *Id.* Though, the summary explained Baxter was shown two photo arrays during his second interview, not one. *Id.* And he made no identification from the first, but identified Mullins in the second as the man who got into the passenger seat. *Id.* On these attestations by Detective Gross, Mr. Kelly was arrested and charged with homicide in connection with the murder of Hughston. *Id.*

Following his arrest, Mr. Kelly hired private investigator Jerry Benoff. *See* Compl., ECF 1 at ¶37. Mr. Benoff conducted an interview of Williams "a few weeks after Mr. Kelly was arrested[.]" *Id.* She claimed police harassed her after the murder, questioning her "about six times" before her second statement, and accusing her of protecting drug dealers. *Id.* Williams said detectives showed her a single photo of Mr. Kelly and named him, even though other detectives believed someone named "Tommy" from Page Street was involved. *Id.*

A joint preliminary hearing for Mr. Kelly and Mullins was held on October 31, 1995. *See* Compl., ECF 1 at ¶39. In the morning of that day, Williams informed police that on the night of the shooting, Mr. Kelly passed the gun to Mullins prior to the murder. *Id.* She then testified to those facts at the hearing. *Id.* at ¶40. Williams did, however, state that Mr. Kelly "don't look like the picture I saw" when asked to identify him from the stand. *Id.* Mr. Kelly then was bound over for trial. *Id.* at ¶¶40–41.

Trial occurred in August of 1996. *See* Compl., ECF 1 at ¶41. "[T]he prosecution's case was based solely on the identification testimony of Ernestine Williams and Colie Baxter[.]" *Id.* Baxter testified consistent with his first statement to Detective Dougherty. *Id.* at ¶¶23, 41. He also "identified Mr. Kelly, for the first time, as the driver of the vehicle he observed that evening." *Id.* at ¶42. Williams also took the stand. *Id.* at ¶43. She identified Mr. Kelly from the stand, stating she saw him and Mullins murder Hughston. *Id.* Williams also admitted to consuming alcohol and smoking crack cocaine throughout the day of the murder. *Id.* Mr. Kelly called only one witness, Kenyatta. *Id.* at ¶44. He testified that in the days following his brother's shooting, Williams told him twice that she had witnessed the incident and that "Tommy, Kendall, and Boonchie" were responsible for his brother's death. *Id.* The jury thereafter convicted Mr. Kelly

and Mullins of first-degree murder and criminal conspiracy.  *Id.* at ¶45.  The sentence was life without the possibility of parole.  *Id.* at ¶46.

However, Mr. Kelly and the DAO successfully overturned the conviction in July of 2024.  *See* Compl., ECF 1 at ¶1.  They argued that evidence implicating Tommy Lockwood in the murder was withheld.  *Id.* at ¶¶44 n.5, 46–49.  This evidence allegedly included notes indicating that Baxter identified Lockwood as the driver from a photo array presented by Detective Jastrzembski, Police Archives records demonstrating that homicide detectives ran court histories for Lockwood in connection with the Hughston murder, and statements from Kevin Brown and Lydell Jackson linking Lockwood to the murder and drug trade.  *Id.* at ¶¶49(a)–(c).  Since the DAO and Mr. Kelly agreed Lockwood committed the murder, they also claimed information about his involvement in other homicides should have been disclosed prior to the prosecution.  *Id.* at ¶¶50(a)–(c), 57.  As a result of this unified interpretation of events,  Mr. Kelly was released on July 18, 2024.  *Id.* at ¶60.

Mr. Kelly commenced this civil action five months later on December 17, 2024.  *See* Compl., ECF 1.  He claims Defendant Detective Frank Jastrzembski is liable with other individual defendants, and the City of Philadelphia, for violation of his rights guaranteed by the United States Constitution.  *Id.* at 32–39.  He asserts a total of seven claims, all but one are directed against Detective Jastrzembski and the other individuals defendants.  *Id.*  None of the theories of liability are plausible.  Detective Jastrzembski therefore requests this Honorable Court grant this Motion and dismiss the claims with prejudice.

## ARGUMENT OF LAW

I.  **The Complaint must be dismissed as to Detective Jastrzembski for failure to assert a claim to relief that is plausible on its face.**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a challenge to the legal sufficiency of a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). "To survive a Rule 12(b)(6) motion, a complaint must set forth enough factual allegations to 'state a claim to relief that is plausible on its face.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim requires the pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). Although the plausibility standard "does not impose a probability requirement," the standard "does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully[.]" *Id.* (cleaned up). An averment which is "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* So too do "naked assertions devoid of further factual enhancement" and the plaintiff's "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (cleaned up).

Courts employ a three step approach to determine plausibility. *See Connelly*, 809 F.3d at 787. A reviewing court will first "take note of the elements plaintiff must plead to state a claim." *Id.* (cleaned up). It then will identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (cleaned up); *accord Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions'

or 'legal conclusions' when deciding a motion to dismiss." (citation omitted)).  Finally, if well-pleaded factual allegations remain, a "court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly*, 809 F.3d at 787 (cleaned up).  If the remaining allegations do not allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then dismissal of the insufficiently pled claim is required.  *Id.* at 786 (citation omitted).

Here, Mr. Kelly failed to assert well-pleaded allegations against Detective Jastrzembski.  Certain of the allegations fail to provide adequate notice of what the claim is and the grounds upon which its rests, while others fail for reasons of qualified immunity.  Detective Jastrzembski takes each set or arguments in turn.

### A.    The Complaint lacks facts supporting a reasonable inference that Detective Jastrzembski committed the constitutional torts alleged.

The only allegation concerning—not even against—Detective Jastrzembski relates to a note indicating that sometime prior to trial, he presented a photo array to Baxter, from which Baxter identified Lockwood as the driver of the getaway car.  *See* Compl., ECF 1 at ¶49(a).  Mr. Kelly then specifically alleges that note was discovered in the DAO investigation file.  *Id.* at ¶¶46–47.  There is no plausible claim of liability against Detective Jastrzembski on the facts alleged here.

The Rule 12 analysis begins with reference to the elements Mr. Kelly must plead to state a claim.  *See Connelly*, 809 F.3d at 787.  For all but one claim, he invokes the Civil Rights Act of 1871, *codified as* 42 U.S.C. § 1983, which provides "a federal cause of action allowing citizens to sue a state or local official in federal court for violating constitutional rights, privileges and immunities through an abuse of his position."  *Fogle v. Sokol*, 957 F.3d 148, 157 (3d Cir. 2020) (citing 42 U.S.C. § 1983) (cleaned up).  The statute "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States

Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a claim under § 1983, a plaintiff must plausibly allege the violation of a right secured by the Constitution was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).

Mr. Kelly failed to plead factual content supporting a reasonable inference that Detective Jastrzembski violated his constitutional rights. He therefore failed to plead the first element of his § 1983 claims.

### 1. Counts I and VI fail as the Complaint does not support an inference that Detective Jastrzembski initiated criminal proceedings.

At Count I, Mr. Kelly alleges Detective Jastrzembski maliciously prosecuted him in violation of the Fourth and Fourteenth Amendments.[3] *See* Compl., ECF 1 at ¶¶82–87. He claims Detective Jastrzembski "fabricated evidence and intentionally withheld and misrepresented exculpatory evidence, all of which resulted in an arrest and prosecution without probable cause." *Id.* at ¶84. Mr. Kelly lodges similar accusations at Count VI in support of the pendent claim for malicious prosecution under Pennsylvania law. *Id.* at ¶¶108–110. Detective Jastrzembski will therefore address the claims together.

"[M]alicious prosecution . . . remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Wallace v. Kato*, 549 U.S. 384, 390 (2007). Under the Fourth Amendment, a plausible claim of malicious prosecution requires the assertion of factual content from which the Court may reasonably infer:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to

---

[3] Detective Jastrzembski is entitled to qualified immunity on the Fourteenth Amendment theory of malicious prosecution, since there is no clearly established right against malicious prosecution under the Due Process Clause. *Infra*, at B(1).

> justice; and (5) the plaintiff suffered deprivation of liberty consistent
> with the concept of seizure as a consequence of a legal proceeding.

*Allen v. New Jersey State Police*, 974 F.3d 497, 502 (3d Cir. 2020); *accord Thompson v. Clark*, 596 U.S. 36, 49 (2022) (favorable termination requires only that the prosecution ended without a conviction, not evidence of innocence). Similarly, a plausible assertion of malicious prosecution under Pennsylvania law requires factual content demonstrating the first four elements of a federal claim, but not the fifth. *Cf. Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (citing *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249*, 544 A.2d 940, 941 (Pa. 1988)).

The Complaint here lacks any plausible allegation that Detective Jastrzembski initiated the criminal proceedings against Mr. Kelly. *See Allen*, 974 F.3d at 502. "Decisions have recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed information from, prosecuting authorities." *Gallo v. City of Phila.*, 161 F.3d 217, 220 n. 2 (1998) (cleaned up). "Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Burke v. Bachert*, 702 F. Supp. 3d 347, 362 (E.D. Pa. 2023) (Gallagher, J.); *accord White v. Brommer*, 747 F. Supp. 2d 447, 459 (E.D. Pa. 2010) (Knoll Gardner, J.) ("[T]he police officer must take an active role in the initiation of the proceedings and communicate information to the prosecutor which the officer knows to be false."). Mr. Kelly's Complaint lacks any such facts.

There are no facts from which the Court may reasonably infer that Detective Jastrzembski "actually communicated [false] information to the prosecutor or otherwise initiated the proceeding against [Mr. Kelly]." *Brommer*, 747 F. Supp. 2d at 460. There is no allegation concerning his awareness of the investigative leads. *Cf. Ogrod*, 598 F. Supp. 3d at 266 (plausible allegation of

initiation for malicious prosecution where defendants knew of information contradicting the plaintiff's confession but failed to disclose it to the prosecutor before the murder trials). There are no facts alleging he personally suppressed the information—and the allegation that the presentation was memorialized in notes rebuts any such assertion. *See* Compl., ECF 1 at ¶49(a). At worst, the Complaint shows that he conducted a photo array and relayed Baxter's identification to the DAO, who then recorded the information in written notes. *Cf. Merrero v. Micewski*, No. CIV. A. 96-8534, 1998 WL 414724, at *7 (E.D. Pa. July 22, 1998) (Broderick, J.) (granting summary judgment in favor of two officers on the plaintiff's malicious prosecution claim, as they only helped prepare documents passed to the prosecutor by a third officer, with no direct communication with the prosecutor, and insufficient evidence of initiation).

The Complaint utterly fails to allege facts supporting a reasonable inference that Detective Jastrzembski influenced prosecutorial discretion. *Cf. Gatter v. Zappile*, 67 F. Supp. 2d 515, 521 (E.D. Pa. 1999) (Katz, J.) (concluding officer defendants did not initiate criminal proceedings where decision to prosecute was based on information provided by a third party), *aff'd*, 225 F.3d 648 (3d Cir. 2000). Instead, Detective Gross swore out the AOPC used to establish probable cause for Mr. Kelly's arrest and prosecution. *See* Compl., ECF 1 at ¶¶35, 36. The facts alleged here only state that the interview was taken by Jastrzembski—nothing more. *Id.* at ¶49(a). These accusations are nothing more than "naked assertions devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678. As such, the Complaint fails to state a plausible claim for malicious prosecution under the Fourth Amendement and Pennsylvania Law. *See Twombly*, 550 U.S. at 570. Counts I and VI should therefore be dismissed with prejudice, since amendment would be futile.

### 2.   The Fourteenth Amendment due process claims at Count II are implausible.

At Count II, Mr. Kelly asserts Detective Jastrzembski violate his rights under Due Process Clause of the Fourteenth Amendement "by fabricating inculpatory evidence and deliberately using coercion and/or suggestion to obtain inculpatory witness statements[,]" as well as "intentionally withholding, concealing and/or suppressing material exculpatory and impeachment evidence[.]" Compl., ECF 1 at ¶¶89–90.  Both due process claims are implausible.

### a.   There is no allegation that Detective Jastrzembski "formulated or submitted" known false evidence.

Due process is designed to protect against "corruption of the truth-seeking function of the trial process." *United States v. Agurs*, 427 U.S. 97, 104 (1976).  Its protections extend to guard against the imposition of criminal liability through use of fabricated evidence.  *See Halsey v. Pfeiffer*, 750 F.3d 273, 293 (3d Cir. 2014).  A plausible claim of fabricated evidence requires the pleading of factual content from which the Court may reasonable infer the defendant "formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth." *Mervilus v. Union Cnty.*, 73 F.4th 185, 194–95 (3d Cir. 2023).  Though, "there is a notable bar for evidence to be considered fabricated[,] . . . testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Black v. Montgomery Cnty.*, 835 F.3d 358, 372 (3d Cir. 2016) (citation omitted).  The false evidence must be "so significant that it could have affected the outcome of the criminal case." *Halsey*, 750 F.3d at 295.

Under these principles, the Complaint fails to assert any claim—let alone a plausible one— that Detective Jastrzembski "formulated or submitted false evidence[.]" *Mervilus*, 73 F.4th at 194– 95.  The only allegation related to him states that, sometime prior to trial, Detective Jastrzembski showed Baxter a photo array, from which Baxter identified Lockwood as the driver of the getaway car.  *See* Compl., ECF 1 at ¶49(a).  Even if well-pleaded, the allegation that Detective

Jastrzembski's conducted occurred "prior to trial" necessarily defeats any Fourteenth Amendment due process claim against him.  *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 369 n.8 (2017) ("[I]f the proceeding is tainted—as here, by fabricated evidence—and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights[.]").   It is unclear from the Complaint what false evidence Detective Jastrzembski is alleged to have "formulated or submitted," and it is equally unclear whether "there is a reasonable likelihood that, without the use of that evidence, [Mr. Kelly] would not have been convicted."  *Halsey*, 750 F.3d at 294; *cf Butler v. Djindiev*, No. 19-CV-6131, 2020 WL 1330749, at *4 (E.D. Pa. Mar. 19, 2020) (Sānchez, J.) (dismissing due process fabrication claim where complaint failed to clearly identify which officer was responsible for the alleged fabrication).  The Fourteenth Amendment due process claim at Count II for evidence fabrication should therefore be dismissed—with prejudice.  *See Twombly*, 550 U.S. at 570.

### b.     There is no allegation Detective Jastrzembski withheld favorable evidence.

Fourteenth Amendment due process also requires the State to disclose evidence in their possession which is favorable to the accused.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  To state a plausible constitutional violation under *Brady*, the Court must be able to reasonably infer: (1) the withheld evidence was either exculpatory or impeaching; (2) the defendant suppressed the evidence, either willfully or inadvertently; and (3) resulting prejudice that is material.  *See Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 28485 (3d Cir. 2016) (*en banc*).  Materiality requires a demonstration that "the government's evidentiary suppression undermines confidence in the outcome of the trial."  *Id.* at 285 (cleaned up).

However, "the *Brady* duty to disclose exculpatory evidence to the defendant applies only to a prosecutor."  *Gibson v. Superintendent of N.J. Dep't of Law and Public Safety-Div. of State*

*Police*, 411 F.3d 427, 442 (3d Cir. 2005). Mr. Kelly alleges generally that the exculpatory evidence "establish[ing] his factual innocence" was revealed when the DAO produced its homicide investigation files for the Hughston murder. *See* Compl., ECF 1 at ¶¶46–47. He then submits the notes memorializing Detective Jastrzembski's photo presentation were produced from this file. *Id.* at ¶49(a). Although he specifically claims "the PPD withheld other witness statements and evidence obtained during their investigation of other homicides in the area[,]" no such allegations are made with respect to the notes, and no such allegations are are directed at Detective Jastrzembski. *Id.* at ¶1. To be sure, the notes precede Mr. Kelly description of "[o]ther critical, exculpatory evidence the Commonwealth withheld[.]" *Id.* at ¶¶49–50. The Complaint here lacks facts or allegations that Detective Jastrzembski withheld Baxter's identification of Lockwood from prosecutors. *See* Compl., ECF 1 at ¶49(a). And again, the presence of notes in the DAO investigation file rebut any such assertion. *See Yarris v. Cty. of Delaware*, 465 F.3d 129, 141 (3d Cir. 2006) (observing police discharge their disclosure obligations by submitting evidence to the prosecutor). The due process claim predicated upon *Brady* is for this reason implausible. *Cf. Aponte v. Borough of Pottstown*, No. CV 16-5006, 2017 WL 3675388, at *3 (E.D. Pa. Aug. 25, 2017) (Beetlestone, J.) (granting motion to dismiss *Brady* claim; concluding town manager cannot be liable because only prosecutors must disclose exculpatory evidence directly to defendants).

### 3. There is no plausible claim Detective Jastrzembski conspired to violate Mr. Kelly's federal rights.

At Count III, Mr. Kelly avers Detective Jastrzembski conspired with the other individual Defendants to deprive him of specific constitutional rights. *See* Compl., ECF 1 at ¶¶95–96. Mr. Kelly therefore must plead factual content supporting a reasonable inference that Detective Jastrzembski and others "reached an understanding to deprive him of his constitutional rights." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (cleaned up). The

Complaint must support a reasonable inference that Detective Jastrzembski and others reached an "agreement" to deny Mr. Kelly his federally protected rights, and a constitutional violation actually resulted from the detectives' "concerted action." *Id.* at 295. Indeed:

> To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor. Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy. It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism.

*Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 648 (E.D. Pa. 2014) (Goldberg, J.). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient." *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (Reed, J.) (cleaned up).

There is no plausible allegation that Detective Jastrzembski participated in a conspiracy to violate Mr. Kelly's constitutional rights. *See Jutrowski*, 904 F.3d at 293–94. The absence of facts regarding an "agreement" with, and "concerned action" by, Detective Jastrzembski is highlighted by the specificity of the allegations directed at towards detectives. Mr. Kelly alleges "lead investigating Detectives Hoffner, Reinhold, Brown, Mee, and Dougherty, all knew about the drug organization, the drug territory disputes happening in the immediate area of both homicides, the names and faces of known members of the drug organization, and the color and types of vehicles commonly driven by each member." Compl., ECF 1 at ¶57. There are no allegations from which the Court may reasonably infer that Detective Jastrzembski's "independent conduct caused [Mr. Kelly] harm or even that the alleged perpetrators of the harm acted in conscious parallelism" with him. *Rosembert*, 14 F. Supp. 3d at 648. Nor does the Complaint illustrate "certain other actions"

by Detective Jastrzembski in furtherance of the alleged conspiracy. *Marchese*, 110 F. Supp. 2d at 371. Again, the Complaint fails to allege Detective Jastrzembski did anything other than present a photo array to Baxter, and then communicate the information provided to the DAO. *See* Compl., ECF 1 at ¶¶46, 47, 49(a). Consequently, Count III is implausible and should therefore be dismissed with prejudice.

**B.    Detective Jastrzembski is entitled to qualified immunity on specific due process claims at Counts I, II, and IV.**

Qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Williams v. Sec'y Pennsylvania Dep't of Corr.*, 117 F.4th 503, 514–15 (3d Cir. 2024) (citation omitted). The inquiry considers whether "the facts put forward by the plaintiff show a violation of a constitutional right and whether the right was clearly established at the time of the alleged misconduct." *Id.* (cleaned up). A district court possesses discretion in deciding which of the two questions it will address first. *Id.* (citation omitted).

Certain of Mr. Kelly's due process claims fail because the rights he invokes are either not recognized or not clearly established. Specifically, there is no clearly established right under the Due Process Clause to be free from malicious prosecution, to a constitutionally adequate police investigation, or to intervention by officers in the types of alleged misconduct he describes. Detective Jastrzembski is therefore entitled to qualified immunity on all such claims.

**1.    There is no clearly established right against malicious prosecution under the Due Process Clause of the Fourteenth Amendment.**

At Count I, Mr. Kelly alleges Detective Jastrzembski maliciously prosecuted him in violation of the Fourth and Fourteenth Amendments. *See* Compl., ECF 1 at ¶¶82–87. However, no such right is clearly established under the Fourteenth Amendment—not in 1995, and not today.

The clearly established inquiry is subject to an "exacting standard[.]" *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (citation omitted). "[T]he focus is on whether the officer had fair notice that her conduct was unlawful, [since] reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (*per curiam*) (citation omitted). "[C]ontrolling authority or a robust consensus of cases of persuasive authority" must establish the right with "a high degree of specificity[,]" such that "the legal principle clearly prohibit[s] the officer's conduct in the particular circumstances before him." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). Although the plaintiff need not point to "a case directly on point," the legal principle "must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). This is because "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (cleaned up and emphasis in original). Consequently, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (citation omitted).

Here, there is no clearly established right to be free from malicious prosecution under the Due Process Clause of the Fourteenth Amendment. In *Albright v. Oliver*, the Supreme Court held that there is no *substantive* due process right to be free from malicious prosecution. 510 U.S. 266, 271 (1994). While the Third Circuit has not yet opined on the viability of such an action under the *procedural* component of the Due Process Clause, it has "suggest[ed] that Supreme Court case law leaves only the Fourth Amendment as [a] potential source of malicious prosecution claims." *Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir. 1998). As late as 2014, the Third Circuit still noted that the precise question remained unanswered. *See Halsey v. Pfeiffer*, 750 F.3d 273, 291 n.14 (3d Cir. 2014) (appellant "abandoned the Fourteenth Amendment iteration of the malicious

prosecution claim, thus obviating the need for us to decide its viability" (citation omitted)).  And this Court concluded just two weeks ago that such a right still is not clearly established.  *See Lazar v. City of Philadelphia*, No. CV 24-907, 2025 WL 886952, at *8 n.9 (E.D. Pa. Mar. 21, 2025) (McHugh, J.) ("Almost every judge in this District has concluded that after *Albright*, there was no clearly established right under the Fourteenth Amendment to be free of malicious prosecutions." (collecting cases)).  Accordingly, Detective Jastrzembski is immune from liability at Count I to the extent Mr. Kelly's malicious prosecution claim is predicated upon the Due Process Clause of the Fourteenth Amendment.  *Cf. Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 266 (E.D. Pa. 2022) (Padova, J.) (concluding it was not clearly established in 1992 or 1996 that Fourteenth Amendment provided due process right against malicious prosecution, and thus police officers were entitled to qualified immunity from malicious prosecution action insofar as it was grounded on Due Process Clause).

## 2.    There is no constitutional right to an adequate police investigation.

At Count II, Mr. Kelly claims Detective Jastrzembski violated rights afforded by the Due Process Clause of the Fourteenth Amendment by "deliberately failing to conduct a constitutionally adequate investigation[.]"  Compl., ECF 1 at ¶91.  No such right exists.

There is no Fourteenth Amendment right to a constitutionally adequate investigation.  *See Geness v. Cox*, 902 F.3d 344, 354 n.5 (3d Cir. 2018) (observing § 1983 plaintiffs may not reframe false arrest and malicious prosecution claims as a Fourteenth Amendment due process violation); *accord Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) ("[N]egligence by public officials is not actionable as a due process deprivation of a civil right." (citation omitted)).  And even if there were, it certainly was not clearly established in 1995.  *Cf. Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 386 (E.D. Pa. 2018) (Pratter, J.) (even if purported right to adequate investigation exists "it is not—and certainly was not in the mid–1990s—clearly established" (citation omitted));

*Outlaw v. City of Philadelphia*, No. CV 21-1290, 2021 WL 3471168, at *6 (E.D. Pa. Aug. 6, 2021) (Kenney, J.) ("[E]ven if such a right exists, the murkiness of the law makes clear that the right is not clearly established today, nor was it clearly established between 2000 and 2004."). Detective Jastrzembski thus is entitled to qualified immunity on the "inadequate investigation" aspect of Mr. Kelly's due process claim at Count II.

### 3. There is no constitutional right to to intervention under the facts alleged.

At Count IV, Mr. Kelly alleges Detective Jastrzembski is liable for failing to intervene and prevent the constitutional violations committed by other state actors. *See* Compl., ECF 1 at ¶¶98–101. He is mistaken.

Mr. Kelly's allegations do not implicate those circumstance in which a duty to intervene arises. *See, e.g.*, Compl., ECF 1 at ¶1. A clearly established right to have state actors intervene in the constitutional torts of another exists only "when the underlying constitutional violation involves excessive force or sexual assault of a person in custody or detention[.]" *Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023). The Third Circuit has expressly stated "that [its] precedent does not establish, let alone clearly establish, a right to intervention in other contexts." *Id.* (footnote omitted). Mr. Kelly does not allege facts giving rise to a plausible claim or excessive force or sexual assault, nor that such conduct occurred while in custody or detention. *See* Compl., ECF 1. Instead, his claims concerned allegations that the City of Philadelphia prosecuted him using "coerced statement and testimony" of other people, "as well as fabricated and suppressed evidence." *Id.* at ¶2. There is no duty to intervene under such allegations—even if well-pleaded. *See Thomas*, 88 F.4th at 285. Detective Jastrzembski is therefore entitled to qualified immunity from the intervention claim at Count IV. *Cf. Onyiah v. City of Philadelphia*, 660 F. Supp. 3d 407,

415 (E.D. Pa. 2023) (Padova, J.) ("[P]olice officers have no clearly defined duty to intervene outside of the Eighth Amendment excessive force context." (collecting cases)).

## CONCLUSION

"To survive a Rule 12(b)(6) motion, a complaint must set forth enough factual allegations to 'state a claim to relief that is plausible on its face.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires the pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Complaint here contains nothing more than "naked assertions devoid of further factual enhancement" and Mr. Kelly's "formulaic recitation of the elements of a cause of action[.]" *Id.* (cleaned up). There are no well-pleaded allegations against Detective Jastrzembski, so he respectfully requests the Complaint be dismissed with prejudice.

Respectfully Submitted,

**MARSHALL DENNEHEY, P.C.,**

BY: _____
JOSEPH J. SANTARONE, JR.
JOSHUA W. BROWNLIE
PA Attorney ID Nos.: 45723, 330511
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(215) 575-2626

*Attorneys for Defendant*
*Detective Frank Jastrzembski*

Date:  April 4, 2025

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMES KELLY, | : Civil Action No.: 2:24-cv-06701 |
| Plaintiff, | : |
| v. | : |
| CITY OF PHILADELPHIA, *et al.*, | : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I, Joshua W. Brownlie, Esquire, do hereby certify that a true and correct copy of the Motion to Dismiss filed on behalf of Defendant Detective Frank Jastrzembski was electronically filed with the Court this date and is available for viewing and downloading from the Electronic Case File System. All counsel of record were served via electronic notification.

Respectfully Submitted,

**MARSHALL DENNEHEY, P.C.,**

BY: _____
JOSEPH J. SANTARONE, JR.
JOSHUA W. BROWNLIE
PA Attorney ID Nos.: 45723, 330511
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2626

*Attorneys for Defendant*
*Detective Frank Jastrzembski*

Date: April 4, 2025

24