**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES KELLY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 2:24-cv-06701-JFM |
| | : |
| THE CITY OF PHILADLPHIA, et al., | : HONORABLE JOHN F. MURPHY |
| | : |
| | : |
| Defendants. | : |
| | : |

**THE CITY OF PHILADELPHIA AND DETECTIVES HOFFNER,
GROSS, MEE, LUBIEJEWSKI, DOUGHERTY, REINHOLD AND
VIVARINA'S[1] REPLY IN SUPPORT OF THEIR MOTION TO DISMISS (ECF #60)**

Much of Plaintiff's response brief consists of Plaintiff merely repeating his allegations and stating *ipse dixit* that they are sufficient. But this only highlights the pleading flaws Defendants identified in their motion. As to Plaintiff's theory that witness Ernestine Williams was somehow coerced into incriminating Plaintiff, it is now even more apparent that Plaintiff is relying on conclusions and innuendoes, instead of any facts, to support that theory. As to Plaintiff's theory that Defendants withheld a host of evidence aside from Williams's purported coercion, that theory has no chance of success – at least in its current form (if ever) – because Plaintiff admits he mispled that claim. For these reasons, Plaintiff's entire Second Amended Complaint should be dismissed.

---

[1] In Defendants' Motion, defense counsel explained that Defendant Vivarina had been misnamed in the Complaint, and that they intended to file an appearance for him soon after filing the Motion. (Defs' Mot., ECF 60-1, p.2, n.1.) Since then, Plaintiff has agreed to amend his Complaint solely to correct Vivarina's name, which is expected to occur on August 20th. At that point, defense counsel will file an appearance for Vivarina and, if needed, an agreed motion to join this motion to dismiss *nunc pro tunc*.

I.     **Plaintiff Fails To Identify Any Incident Where A Defendant Coerced Williams To Inculpate Plaintiff, And Incorrectly Argues That Coercion Can Be Inferred Merely Because Williams's Testimony Changed Over Time.**

In their Motion, Defendants explained that Plaintiff has not alleged anything Williams purportedly experienced that would amount to illegal coercion. Although Williams allegedly felt "harassed" because police did not initially believe her and because she was interviewed several times (all on different days, and never while allegedly under arrest), skepticism and repeat interviews do not violate the Constitution. *Cf Missouri v. Siebert*, 542 U.S. 600, 620 (2004) ("Skilled investigators often interview suspects multiple times.") (Kennedy, J., concurring).

Plaintiff does not cite a single case to the contrary. Nor does Plaintiff cite a single allegation in his Complaint indicating Williams was threatened, hurt, bribed[2] or tricked into inculpating Plaintiff. Instead, Plaintiff wants the Court to do Plaintiff's work for him by inferring that something nefarious must have happened merely because Williams's testimony changed over time. As explained below, such an inference is neither warranted by the facts pled, nor is it consistent with established pleading standards. But first, the lowest hanging fruit must be addressed: namely, the Defendant Detectives who did not even interact with Williams or obtain any incriminating evidence from her.

A.     **Detectives Mee, Vivarina, Dougherty, and Reinhardt.**

First, Plaintiff failed to allege that either Detectives Mee, Vivarina, or Dougherty interacted with Williams. While Detective Reinhold participated in the first two interviews of Williams,

---

[2] While Plaintiff alleges that Williams was relocated to a more affluent area and put in drug rehab in exchange for her testimony, this was allegedly done *after* all Defendants had already interviewed her, and there is no allegation any Defendant made such promises to Williams during her interviews. (*See* Am. Compl., ¶ 50(b) (noting relocation happened "shortly before" Plaintiff's trial).) Moreover, the relocation was allegedly done by the "Commonwealth." (*Id.*)

Plaintiff was never mentioned in those interviews, much less inculpated. (*see* Am. Compl., ¶¶ 29-30). Yet, Plaintiff remains steadfast that these Defendants are still liable for Williams's purported coercion. (*See* Pl.'s Resp., p.4, n.2. & p.23.) The sole basis for this is Plaintiff's "everyone knew everything" theory of liability, whereby Plaintiff claims that "all detectives knew what was going on with all of the Unit's open cases, whether or not they were officially assigned to them." (*See id.* at pp. 8-9, 11 (citing Am. Compl., ¶¶ 51& 59) & p.23 (arguing all Defendants conspired to falsify Williams's testimony because they all knew what each other was doing).) This theory is both legally and factually flawed.

From a legal standpoint, arguing that Detectives Mee, Vivarina, Dougherty and Reinhold can be liable for Williams's purported coercion because they allegedly knew that other detectives were coercing Williams is tantamount to a failure to intervene claim, as Plaintiff essentially argues one detective is responsible for what he knowingly allowed another detective to do. But as argued in Defendants' original motion, no such claim exists in this context. (Defs.' Mot., ECF 60-1, p.14.) Indeed, Plaintiff admits as much and asks that his failure to intervene claim be dismissed. (Pl.'s Resp., ECF 65-1, p.23.)

Even if this theory were legally sound, Plaintiff has not alleged sufficient *facts* to support it. Plaintiff's allegation that all detectives in the Homicide Unit knew what every other detective was doing is the epitome of a conclusory allegation. No facts are pled to support this conclusion, nor is it reasonable to infer such total collective knowledge because even a collaborative work environment does not lend itself to omnipotence. *See*, *e.g.*, *Ou v. Foundations Behavioral Health*, No. 2:24-CV-5954, 2025 WL 935952, *2 (E.D. Penn. Mar. 27, 2025) (noting in regard to motion to dismiss that "the Court cannot draw any *unreasonable* or unsupported inferences) (emphasis in original); *Miller v. Wolk*, No. 20-6301, 2024 WL 1604003, *15 (E.D. Penn. Apr. 12, 2024) (noting

courts need not "draw unreasonable inferences" or accept "bald assertions" in a plaintiff's favor) (internal quotations and citations omitted).

If this conclusory allegation was sufficient to state a valid claim, plaintiffs could sleepwalk through the pleading stage without having to allege wrongdoing against any number of defendants. Indeed, under this boundless approach, all detectives in the Homicide Unit could be sued for the wrongdoing of one. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to…§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution.").

Because neither Detectives Mee, Vivarina, nor Dougherty allegedly spoke to Williams, and because Detective Reinhold never obtained any statement from Williams about Plaintiff, dismissing all claims against these Defendants based on Williams's purported coercion should be noncontroversial.

### B.    Detective Hoffner.

Detective Hoffner merits slightly more discussion. Like Detectives Mee, Vivarina, and Dougherty, Plaintiff nowhere pleads that Detective Hoffner interacted with Williams. However, unlike those other Defendants, Plaintiff admits that this omission was a mistake, and that he meant to allege that Hoffner conducted the third and fourth interviews of Williams. (Pl.'s Resp., ECF #65-1, p.4, n.2.) However, a party cannot amend his complaint via a response brief, so this does not defeat Defendants' arguments as to Detective Hoffner. *See*, *e.g.*, *Strawn v. Lebanon County Correctional Facility*, No. 4:18-CV-00872, 2019 WL 1349777, *2, n.4 (M.D. Penn. Mar. 26, 2019) ("this Court may 'not consider after-the-fact allegations in determining the sufficiency of [a] complaint' under [Rule 12(b)(6)], and [plaintiff] may not amend his complaint in a response brief.") (quoting *Frederico v. Home Depot*, F.3d 188, 201 (3d Cir. 2007)). Nevertheless,

Defendants address Plaintiff's request to amend his Complaint to correct this mistake, because such an amendment would be futile.

During Williams's third interview, she allegedly identified Larry Mullins as the shooter, but said nothing about Plaintiff, so that interview is a nonstarter. (Am. Compl., ¶ 32.) As to Williams's fourth interview, Plaintiff alleges that Williams was shown a photo of Plaintiff and identified him as the man who was seen with Mullins; but, Williams allegedly said nothing that implicated Plaintiff in the *actual* shooting of Hughston (she did not say that Plaintiff passed Mullins the gun until her next interview). (*Id.* at ¶ 33.) This is apparent from Plaintiff's further allegation that the District Attorney's Office did not prosecute Plaintiff for another 22 months, and not until after Williams's fifth interview (which is discussed below, and which did not allegedly involve Detective Hoffner). (*Id.* at ¶¶ 35-36) (Plaintiff admitting that it was solely the information revealed in Williams's fifth interview that created the probable cause for Plaintiff's arrest).

Nothing can be inferred from this – or any other allegations – that Hoffner somehow coerced Williams to inculpate Plaintiff, leading to Plaintiff's arrest and/or prosecution. Not only are no coercive acts by Detective Hoffner alleged anywhere in the Complaint,[3] but the sheer lapse of time between this interview and the prosecution belies any inference that one caused the other.

### C.    Detectives Gross and Lubiejewski.

That leaves only Detectives Gross and Lubiejewski. Plaintiff argues that the Court should

---

[3] Plaintiff alleges that Williams claimed at one point she was shown a photo of Plaintiff and told his name, although this alleged act is not tied to any particular Defendant. First, it is not reasonable to infer that Detective Hoffner is the Detective who allegedly did this. Williams was allegedly shown Plaintiff's photo several times by different Detectives (*see, e.g.*, Am. Compl., ¶ 35), and so inferring any one of them provided Plaintiff's name would be arbitrary. Nonetheless, merely being told Plaintiff's name is in no way coercive or unconstitutional, as what mattered is that Williams *recognized* Plaintiff from his photo – regardless of whether she knew his name. There are simply no allegations in the Complaint that Williams was coerced into making that recognition.

infer these Detectives coerced Williams to inculpate Plaintiff because it was only in the interview they conducted that Williams mentioned Plaintiff handing Mullins a gun. Plaintiff is wrong.

The Third Circuit has been clear that under federal pleading standards, "[a]llegations that are 'merely consistent with a defendant's liability' or show the 'mere possibility of misconduct' are not enough" to state a plausible claim. *Santiago v. Warminster Tp.*, 629 F.3d 121, 134 (3d Cir. 2010) (noting that one could infer either that: (i) supervisors directed their subordinates to use excessive force; or (ii) the subordinates made the choice themselves, and thus no claim was stated against supervisors).

Here, the mere fact that Williams had not earlier mentioned Plaintiff giving Mullins a gun could be explained in several ways, including: Williams being hesitant to provide such information sooner (i.e. not wanting to "get involved"), or Williams lying *without* being coerced (Plaintiff himself seems to believe Williams was trying to protect Tommy Lockwood from suspicion). That police coercion is yet another possible explanation does not mean it is the explanation the Court must choose simply to sustain Plaintiff's Complaint. *See Villarosa v. North Coventry Tp.*, 711 Fed.Appx. 92 (3d Cir. 2017) (explaining that inconsistencies in witness's statements and witness's inability to identify plaintiff/suspect was not enough to state claim against officers for coercion, as it was only "mere possibility" that witness was lying or that officers knew that). Ironically, if Williams was hesitant to share this information, and Detectives Gross and Lubiejewski's interview is what finally revealed that Plaintiff gave Mullins a gun, it would be those Detectives' effective interview techniques that now embroils them in a lawsuit alleging the mere possibility of coercion.

It is especially noteworthy that despite the length of time that has passed since Plaintiff's conviction, and the fact that Plaintiff's investigator spoke to Williams after Plaintiff's arrest (*see* Am. Compl., ¶ 37), Plaintiff never alleges that Williams has disavowed her identification of him

or stated that police did anything to make her lie. Thus, in the end, Plaintiff is left with nothing but a witness who originally did not inculpate Plaintiff, but later did. That alone is not enough to state a plausible claim of police coercion, and all of Plaintiff's claims based on that purported coercion (malicious prosecution, fabricating evidence, etc.) must be dismissed as to Detectives Gross and Lubiejewski, as they must as to all other Defendants.

## II.    Because Of A Purported Pleading Error, Plaintiff Has Not Alleged A Claim Based On The Withholding Of Information Unrelated To Williams.

Movants' primary argument as it relates to all the non-Williams "evidence" Plaintiff claims was withheld from him is that Plaintiff admits it was the Commonwealth that withheld such information, not any Movant. (*See* Defs.' Mot., pp.10-12.) Plaintiff acknowledges this, but says it was a mistake, and that he meant to allege that the police withheld the information. (Pl.'s Resp., p.18.) Plaintiff then tries to minimize this pleading error by claiming it is still clear from his current allegations that the police withheld this information from the Commonwealth. (*Id.* at p.18.), but each portion of his Complaint Plaintiff cites for that argument says nothing of the kind.

For example, Plaintiff cites paragraph 47 of his Complaint which says that "*newly produced notes from the homicide investigation*" show that an alternative suspect was identified. (*Id.* (emphasis in original).) But this allegation does *not* address whether the Commonwealth had these "newly produced" notes originally and simply didn't produce them sooner (and, again, the other allegations in Plaintiff's complaint regarding the "Commonwealth" essentially *do* say that). Instead, it is only the argument portion of Plaintiff's response brief that flushes out Plaintiff's new theory that the police withheld the notes from the Commonwealth, as opposed to the Commonwealth withholding them from Plaintiff. But, as noted above, a complaint cannot be amended in a response brief (especially an amendment this significant). *See*, *e.g.*, *Strawn*, No.

4:18-CV-00872, 2019 WL 1349777, *2, n.4 (M.D. Penn. Mar. 26, 2019).

This puts Defendants in a difficult spot, as they are now confronted with addressing the sufficiency of a hypothetical complaint that does not exist, and at the reply stage no less. Moreover, unlike Plaintiff's pleading mistake regarding Detective Hoffner (*see* pp.4-5, *supra*), it is not easy for Defendants to merely imagine what a corrected complaint would look like and engage on its merits now, because even if Plaintiff meant to somehow implicate the police generally in withholding certain information from the Commonwealth, Defendants have no idea which one of them (if any) Plaintiff has in mind, or what facts Plaintiff would plead in correcting this mistake that would implicate any one Defendant or another.

Now, it is up to the Court to decide if Plaintiff should be given a fourth attempt to state a valid claim, especially given this glaring purported error was somehow not corrected in three prior pleadings already. But as the Complaint stands today, Plaintiff has pled himself out of court regarding any alleged withholding or fabrication of evidence other than Williams's testimony (which theory, as discussed in Section I above, has its own host of problems). Whatever Plaintiff may be allowed to file in the future, dismissal is obviously the correct result now.

## Conclusion

Plaintiff's Counts I-VI against Movants should be dismissed.

Respectfully submitted,

By:    */s/ Brian Wilson*
        Natalie Adeeyo, Jami Galbraith
        Kimberly Mann, Brian Wilson
        Nathan & Kamionski LLP
        206 South Jefferson Street
        Chicago, IL 60661
        (312) 957-6649
        bwilson@nklawllp.com
Dated:  August 8, 2025                        *Attorneys for Defendants*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notification to all registered parties.

/s/ *Kimberly A. Moin*
Kimberly A. Moin, Paralegal