**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES KELLY,**<br>Plaintiff,<br>v.<br>**THE CITY OF PHILADELPHIA, ET AL.,**<br>Defendants. | : | **Case No: 2:24-cv-06701-JFM** |

**ORDER**

AND NOW, this __________ day of ______________, 2026, upon consideration of Defendants' Motion to Stay Discovery, and any response thereto, it is **HEREBY ORDERED** that the Motion is **GRANTED** and all discovery in the above-captioned matter is **STAYED** pending further Order of this Court, including specifically the depositions of James Arrington (August 17, 2026), and Carrie Wood, Esquire (August 24, 2026). At a minimum, no depositions shall proceed until Plaintiff has responded to Defendants' written discovery served August 7, 2026.

BY THE COURT:

______________________________
The Honorable John F. Murphy
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES KELLY,** | |
| Plaintiff, | |
| v. | **Case No: 2:24-cv-06701-JFM** |
| **THE CITY OF PHILADELPHIA, ET AL.,** | |
| Defendants. | |

**DEFENDANTS' MOTION TO STAY DISCOVERY PENDING FURTHER INVESTIGATION INTO CLAIMS RAISED BY WITNESS ERNESTINE WILLIAMS**

Defendants, the City of Philadelphia, Walter Hoffner, Michael Gross, Leon Lubiejewski, Steven Vivarina, Richard Reinhold, and the Estate of Robert A. Snell, (collectively "Defendants"), by and through their undersigned counsel, hereby respectfully move this Court for an Order staying all discovery in this matter pending further investigation into the claims raised by witness Ernestine Williams during her July 23, 2026 deposition. Defendants further request oral argument on this motion. In support thereof, Defendants state as follows:

**INTRODUCTION**

On July 23, 2026, Ernestine Williams—the key prosecution witness whose testimony was central to Plaintiff's conviction nearly three decades ago—was deposed in this matter. During that deposition, Williams provided detailed, sworn testimony that Plaintiff's counsel, Keir Bradford-Grey, personally came to Williams's home, harassed and intimidated her, and pressured her to change her prior statements and trial testimony. Williams testified that she was so disturbed by

counsel's conduct that she called the police and filed a report. These allegations strike at the very heart of the discovery process and raise profound concerns about the integrity of this litigation.

In light of these extraordinary circumstances, Defendants respectfully move this Court to stay all discovery in this matter pending further investigation into Ms. Williams's claims regarding counsel's conduct. A district court has broad discretion to stay discovery when doing so serves the interests of justice. Here, proceeding with depositions of additional witnesses—before Defendants have had the opportunity to investigate the full scope of Plaintiff's counsel's contact with Williams and potentially other witnesses—would prejudice Defendants, compromise the integrity of the discovery process, and waste judicial resources. At a minimum, no depositions should proceed until Plaintiff has responded to Defendants' written discovery served on August 7, 2026, which is specifically directed to the witness-contact issues raised by Williams's testimony. Therefore, and as further detailed below, Defendants' motion to stay discovery should be granted.

## RELEVANT BACKGROUND

Plaintiff James Kelly filed his Third Amended Complaint in this action on December 23, 2025. The Complaint indicates that Kelly was released in 2024 after serving twenty-nine years in state prison for the January 1, 1993 murder of Travis "Bud" Hughston, and alleges that the only evidence connecting Kelly to the murder was the testimony of Ernestine Williams and the statements of Colie Baxter. *See* Third Am. Compl., ECF No. 106 at ¶ 1.

Plaintiff alleges that Williams eventually identified Larry Mullins as the shooter and Kelly as "the guy with Larry that killed Travis Hughston," and that Williams later stated Kelly passed Mullins a gun. Plaintiff further alleges that probable cause for his arrest was based solely on Detectives Gross and Lubiejewski's re-interview of Williams, and that Williams's trial testimony was central to the prosecution's case. *Id.* at ¶¶ 33, 37.

Ernestine Williams was deposed on July 23, 2026, at the offices of Nathan & Kamionski LLP in Philadelphia, Pennsylvania. During her deposition, Williams provided testimony that raises serious concerns about Plaintiff's counsel's conduct toward a critical witness in this case.

***Williams's Deposition Testimony Regarding Witness Contact by Plaintiff's Counsel***

During her deposition, Williams testified that Plaintiff's counsel, Keir Bradford-Grey, came to her home, harassed her, and pressured her to change her prior statements and testimony. Specifically, Williams testified the following:

- "But you did come to my house and harass me, just like that man's family did." Ex. 1 Williams Dep. 21:20-22. She added: "I just had to put that out there. I felt the same intimidation that she gave me when she came to my house." *Id.* at 22:14-16.
- "I felt the same way when you came to my house, threatening me that I have to go to court and the way you and his wife, James Kelly's wife, came to my house and threatened me and started telling my neighbors that I put away a innocent man. I felt the same intimidation that I felt that night, that same day. And I have a police report to prove that you was at my house." *Id.* at 21:5-13. When asked whether she was referring to Ms. Bradford-Grey, Williams answered "Yes." *Id.* at 22:17-19.
- Williams testified that Plaintiff's counsel was present with a person she understood to be Kelly's sister-in-law: "That was the date. That's when they came to my house. James Kelly's sister-in-law and her. Them two." *Id.* at 23:10-12. She later testified, "They both were standing on the porch together the whole time and they got in the car and drove off." *Id.* at 34:16-18.
- Williams testified that Plaintiff's counsel and the other individual wanted her to change her testimony. Specifically: "And they wanted me to change my testimony." *Id.* at 24:1-2. She elaborated: "She pulled up my statement, what I had said at the police that interviewed me. And they pulled up my statement and they was saying I need to change my statement." *Id.* at 29:7-10.
- Williams later testified: "They was at my house harassing me, showing me this information about a statement that I gave to police, that the police made me say. That's all they kept saying to me, oh, the police made you say that. you need to tell them that the police made you say that. The police can't make me say nothing." *Id.* at 43:10-18.
- Williams recounted what she was told: "You're going to court. You're going to have to go to court and you're going to have to change your statement and your testimony because, you know, my brother-in-law, you know, James Kelly he didn't kill nobody. And you going to jail because you lied." *Id.* at 31:18-22. When asked whether it was Ms. Bradford-Grey who said Williams would have to go to court and change her statement, Williams answered: "Yes. It was her. Her (indicating). And she pulled it, she said, I'm going to show you what

you have, your statement was, and this is your signature, and you lied and you're going to jail.*"* *Id.* at 32:4-10.

- Williams testified that she told police "they trying to make me change my statement." *Id.* at 33:7-9. Asked who specifically said she needed to change her statement, Williams answered: "This lady right here (indicating)[,]" again pointing at Plaintiff's counsel. *Id.* at 34:3-5.
- Williams further described the manner of the encounter: "First they was banging -- I mean, they was banging on my window. Banging on the door." *Id.* at 30:17-18. "I thought they was going to break the window the way they was banging, so I came downstairs." *Id.* at 31:11-13.
- When sked to define the harassment she experienced, Williams answered: "The way they were hollering and telling my neighbors that I sent some innocent man to jail. And they was screaming." *Id.* at 35:1-5. She testified that "these two women was on my porch, screaming and hollering, saying that I sent an innocent man to jail." Williams Dep. 35:13-16. Williams stated that "both of them was screaming" and the encounter was "really disturbing.*"* *Id.* at 35:19-24.
- Williams also testified, "She had threatened me, her and her friend, threatened. She told me, oh, we know where your daughter live, we know you go to the center, we know everything about you.*"* *Id.* at 40:16-20. Williams further testified: "She said, I know where you -- I know all about you. You don't change your statement, I know where your daughter live, I know you -- I know everything about you. We know where you go to the center at, we know everything about you." *Id.* at 42:3-9.
- Williams testified that the comments made her "[v]ery uncomfortable" and that she called the police because of Plaintiff's counsel's conduct. *Id.* at 42:10-17. When asked whether she feels fearful, Williams answered: "Yes. Because they keep coming to my house. Her and his sister-in-law, all these people keep coming -- yes, I feel threatened. Very.*"* *Id.* at. 45:4-10.
- Williams told Plaintiff's counsel during later questioning: "You need to stop coming to people house making threats before you stand in front of somebody talking about a deposition." *Id.* at 160:22-161:2. She concluded: "And just keep her from my house, please. I really, really stress that she stay away from my house." *Id.* at 260:21-23.

## ARGUMENT[1]

A district court has broad power to stay proceedings, including discovery, as incidental to its inherent power to control its docket. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether a stay of discovery is appropriate, courts in this Circuit consider: (1) the

[1] On August 12, 2026, the parties conferred and Plaintiff agreed to postpone the deposition of William Staton.

length of the requested stay; (2) whether the opposing party will be prejudiced by the stay; (3) whether the moving party will be harmed absent a stay; (4) whether a stay will simplify the issues; and (5) whether discovery has commenced. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 196 (3d Cir. 1999); *Chrysler Motors Corp. v. Fedders Corp.*, No. 91-6160, 1992 WL 7801, at *1 (E.D. Pa. Jan. 13, 1992). As set forth below, each of these factors weighs heavily in favor of staying discovery.

## I. DEFENDANTS WILL SUFFER SUBSTANTIAL HARM ABSENT A STAY.

Williams's sworn deposition testimony describes conduct by Plaintiff's counsel that, if substantiated, constitutes witness tampering, intimidation, and harassment—conduct that threatens the integrity of every aspect of the discovery process. Williams testified under oath that Plaintiff's counsel came to her home, banged on her windows and doors, screamed at her, told her neighbors she "sent an innocent man to jail," pressured her to change her prior statements and trial testimony, and stated, "we know where your daughter live, we know you go to the center, we know everything about you." Ex. 1 Williams Dep. at 40:16-20, 42:3-9. Williams was so fearful that she called the police and filed a report. *Id*. at 42:10-17.

Absent a stay, Defendants will be forced to proceed with depositions of additional witnesses—including William Staton, James Arrington, and Carrie Wood, Esquire—without knowing whether those witnesses have been subjected to similar contact or pressure by Plaintiff's counsel. Proceeding under these circumstances would severely prejudice Defendants, as testimony obtained from witnesses who may have been improperly contacted cannot be relied upon as truthful or voluntary. Defendants require the opportunity to investigate the full nature, scope, and circumstances of Plaintiff's counsel's communications with Williams and any other witnesses before further depositions proceed.

Plaintiff has noticed the videotaped depositions of three witnesses, all scheduled in the coming days:

- William Staton, noticed for August 13, 2026, at 11:00 a.m. at the Marrone Law Firm, LLC, 200 South Broad Street, Suite 610, Philadelphia, PA 19102 (Ex. 2 Notice of Deposition and Subpoena dated July 30, 2026);
- James Arrington, noticed for August 17, 2026, at 10:00 a.m. via Zoom at the Marrone Law Firm, LLC (Ex. 3 Notice of Deposition and Subpoena dated July 28, 2026); and
- Carrie Wood, Esquire, noticed for August 24, 2026, at 10:00 a.m. at the Marrone Law Firm, LLC (Ex. 4 Notice of Deposition and Subpoena dated July 30, 2026).

In light of the testimony elicited during the Williams deposition regarding Plaintiff's counsel's conduct toward a key witness—including alleged efforts to pressure Williams to change her statement and testimony—Defendants submit that these noticed depositions should not proceed at this time.

## II. PLAINTIFF WILL NOT BE SUBSTANTIALLY PREJUDICED BY A STAY.

A temporary stay will not substantially prejudice Plaintiff. The stay is limited in scope and duration—Defendants seek only the time necessary to investigate the witness-contact issues and to receive Plaintiff's responses to written discovery served on August 7, 2026. On August 7, 2026, Defendants served written discovery specifically directed to the witness-contact issues raised by Williams's deposition testimony:

- Defendant Hoffner's First Interrogatories to Plaintiff include interrogatories asking Plaintiff to identify: each meeting or communication with Ernestine Williams from initiation of the lawsuit to present (Interrogatory No. 1); whether Plaintiff or anyone acting on his behalf discussed Williams's identification of Kelly, trial testimony, or police statements (Interrogatory No. 3); what documents were shown or provided to Williams (Interrogatory No. 4); whether anyone suggested to Williams that police coerced her (Interrogatory No. 5); whether anyone asked Williams to recant or modify her statements (Interrogatory No. 6); whether anyone offered benefits, threatened, intimidated, or suggested adverse consequences to Williams (Interrogatory No. 7); the presence and role of any family member or associate of Plaintiff at meetings with Williams (Interrogatory No. 8); whether Plaintiff or anyone acting on his behalf met or communicated with any

other witness for the purpose of discussing anticipated testimony (Interrogatory No. 9); and whether Plaintiff or anyone acting on his behalf paid or offered to pay money or provided anything of value to any witness (Interrogatory No. 19). (*See* Ex. 5 Defendant Hoffner's First Interrogatories to Plaintiff); and

- The City's First Requests for Production to Plaintiff request all written witness statements, declarations, or affidavits relating to the events alleged in the Complaint (RFP No. 1); documents reflecting communications since January 1, 1993 between Plaintiff and Ernestine Williams or Colie Baxter (RFP No. 5); and documents obtained from third parties regarding the lawsuit, named defendants, Ernestine Williams, Colie Baxter, or Plaintiff's criminal prosecution (RFP No. 13). (*See* Ex. 6 City's First Requests for Production to Plaintiff).

The additional time required for Plaintiff to respond to this targeted discovery and for Defendants to investigate the scope of the alleged witness contact will only marginally add to the length of this case. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (the burden is on the movant to show that a stay is justified, but minimal delay weighs in favor of a stay where the issues are serious). Plaintiff will face no cognizable prejudice from this brief delay, whereas forcing Defendants to proceed without essential information about the integrity of witness testimony would cause irreparable harm to the discovery process. *See Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983) (courts should balance competing interests and hardships in determining whether to grant a stay).

## III. A STAY WILL PRESERVE JUDICIAL RESOURCES AND THE INTEGRITY OF THE DISCOVERY PROCESS.

A stay would also promote judicial economy and preserve the integrity of the discovery process. The allegations raised by Williams's testimony—that Plaintiff's counsel personally visited a key witness's home and pressured her to change her statements—bear directly on whether the Court and the parties can rely on the testimony of witnesses in this case. Proceeding with depositions before these issues are investigated risks the waste of substantial judicial and party

resources, as depositions taken under a cloud of potential witness tampering may need to be repeated or their reliability challenged at trial.

Moreover, the facts warrant investigation into: (a) the full circumstances of Plaintiff's counsel's communications with Williams; (b) any involvement of Plaintiff or persons acting on his behalf in those communications; (c) any documents or statements shown to Williams during the encounter; (d) whether other witnesses in this case have been contacted in a similar manner; and (e) any effect the foregoing may have had on noticed or future witness testimony. A stay will ensure that the Court and the parties have the benefit of complete information before discovery proceeds, thereby promoting the fair and efficient administration of justice. *See* Fed. R. Civ. P. 1.

Defendants further seek a protective order under Federal Rule of Civil Procedure 26(c) precluding the depositions from proceeding at this time. Rule 26(c)(1) expressly authorizes the Court, for good cause, to issue an order protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including by forbidding or limiting discovery. Fed. R. Civ. P. 26(c)(1). Here, good cause exists to prevent the noticed depositions from going forward as outlined above. Defendants have also attempted in good faith to resolve this dispute without court intervention, as required by Rule 26(c)(1), but the parties have been unable to reach a resolution concerning all three of the noticed depositions. Accordingly, Defendants respectfully request that the Court enter a protective order prohibiting the depositions from proceeding.

The serious allegations raised by Ernestine Williams's deposition testimony regarding Plaintiff's counsel's conduct toward a critical witness demand investigation before discovery proceeds further. Permitting depositions to go forward under these circumstances would prejudice

Defendants, compromise the integrity of this litigation, and waste judicial resources. Each of the relevant factors weighs decisively in favor of a stay.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court enter an Order: (1) staying all discovery pending Defendants' further investigation into the Williams deposition testimony and alleged witness contact; (2) specifically staying, postponing, or precluding from proceeding at this time the noticed depositions of William Staton (August 13, 2026), James Arrington (August 17, 2026), and Carrie Wood, Esquire (August 24, 2026); (3) at a minimum, staying discovery until Plaintiff has responded to Defendants' written discovery served August 7, 2026; and (4) granting such further relief as the Court deems just and appropriate.

Dated: August 12, 2026

Respectfully submitted,

By: */s/ Jami L. Galbraith*

Shneur Z. Nathan
Avi T. Kamionski
Natalie Y. Adeeyo
Ephraim R. Siff, Pa. Bar No. 334943
Brian Wilson
Kimberly R. Mann
Jami L. Galbraith
NATHAN & KAMIONSKI LLP
575 South Charles Street, Suite 402
Baltimore, Maryland 21201
(410) 630-4493
jgalbraith@nklawllp.com

*Attorneys for the Defendants*

**Certificate of Service**

I, JAMI L. GALBRAITH, an attorney, does hereby certify that on August 12, 2026, a true and correct copy of Defendants' Motion to Stay Discovery was electronically filed with the Court by using the CM/ECF system, which will send electronic notification to all registered parties.

Dated: August 12, 2026

Respectfully submitted,

By: *_/s/ Jami L. Galbraith_*

Shneur Z. Nathan
Avi T. Kamionski
Natalie Y. Adeeyo
Ephraim R. Siff, Pa. Bar No. 334943
Brian Wilson
Kimberly R. Mann
Jami L. Galbraith
NATHAN & KAMIONSKI LLP
575 South Charles Street, Suite 402
Baltimore, Maryland 21201
(410) 630-4493
jgalbraith@nklawllp.com

*Attorneys for the Defendants*