**IN THE UNITED STATES DICTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES KELLY,<br>Plaintiff,<br>v.<br>WALTER HOFFNER, *et al.*,<br>Defendants. | CIVIL ACTION<br>NO. 24-cv-06701-JFM |

**ORDER**

AND NOW, this ________________ day of ________________________, 2026, upon consideration of the Plaintiff's Motion for Leave to Conduct Discovery Regarding Defense Counsel Contacts with Witness Ernestine Williams, and any response thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED. It is further ORDERED and DECREED

1. that the Court finds that written discovery requests and depositions regarding contacts and communications between defense counsel and/or its agents and Ernestine Williams are relevant and within the scope of discovery for this matter and any objections by Defendants to scope and relevance, if made, are hereby overruled;
2. that the parties shall cooperate to schedule any and all depositions required for a full investigation of contacts between defense counsel and/or its agents and Ernestine Williams, and failure to so cooperate will be considered by this Court in any future Motion to Compel related to the discovery that is the subject of this Order;
3. that defense counsel will with twenty (20) days of the date of this Order provide all documents, including electronic data, currently in the possession of their client City of

Philadelphia which relates, refers or pertains to contacts and communication between defense counsel and/or its agents and Ernestine Williams.

BY THE COURT:

____________________________________

HONORABLE JOHN F. MURPHY, J.

**IN THE UNITED STATES DICTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES KELLY,<br>Plaintiff,<br>v.<br>WALTER HOFFNER, *et al.*,<br>Defendants. | CIVIL ACTION<br>NO. 24-cv-06701-JFM |

**PLAINTIFF'S FOR LEAVE TO CONDUCT DISCOVERY REGARDING DEFENSE COUNSEL CONTACTS WITH WITNESS ERNESTINE WILLIAMS**

Plaintiff James Kelly, by and through his attorneys Marrone Law Firm, LLC, hereby requests this Honorable Court to enter an Order granting leave for Plaintiff to conduct discovery related to the Defense counsel's interactions with witness Ernestine Williams, and in support of the Motion, asserts the following:

## INTRODUCTION

This matter arises from a civil rights lawsuit seeking damages for the malicious prosecution and wrongful conviction of Plaintiff James Kelly. In 1996, Mr. Kelly was convicted of first-degree murder based to a great extent on the testimony of Ernestine Williams. Ms. Williams is the only living witness to have identified Mr. Kelly at his trial thirty years ago.[1] Plaintiff's claims are supported, in part, by the myriad conflicting statements (at least eight that are known to Plaintiff) that Ms. Williams made before trial. As part of the discovery process, Plaintiff's counsel approached Ms. Williams at her home and made an inquiry regarding the need for Ms. Williams' testimony. Ms. Williams had an adverse reaction to the presence of Mr. Kelly's

---

[1] The only other witness to identify Mr. Kelly at trial was Collie Baxter, who is now deceased.

counsel who was only present to discuss the need for a deposition. Ms. Williams threatened to cause physical harm to Plaintiff's counsel and called the police.

It was later revealed by Defendants that a similar interaction with Ms. Williams occurred with their counsel when attorney Jami Galbrath, Esquire was attempting to serve Ms. Williams with a subpoena at Ms. Williams' home. Once again, the police were called, but this time, the interaction between police and counsel was memorialized on body-cam video. During the video, defense counsel is asked by police whether there is "anything that should be left out" of the police report.

Plaintiff now seeks to conduct discovery regarding interactions between defense counsel and Ms. Williams. As the Court is aware, Ms. Williams is a VERY favorable witness for the defense in the present case. She has a well-documented history of changing her story regarding the homicide that gives rise to this case. Based on the favorable posture of Ms. Williams' present testimony and the questions raised by the body-cam video of defense counsel at Ms. Williams' home, it is necessary for the Plaintiff to conduct discovery regarding this matter. Plaintiff has outlined these concerns in a detailed letter to counsel(attached as Exhibit A). In their responsive letter (Attached as Exhibit "B"), defense counsel credited the inconsistent and often incoherent testimony of Ernestine Williams and denied that there is any hint of wrongdoing in their own interaction with Ms. Williams. Based on the strident nature of defense counsel's response, it is clear that Court intervention will be necessary for the Plaintiff to determine if the discovery process has been undermined by the actions of defense counsel.

ARGUMENT

The present request results from the Defendants' aggressive and unsubstantiated efforts to derail discovery in this matter. Based solely on the word of Ernestine Williams, whose credibility has always been highly questionable, Defense counsel have initiated a campaign to discredit the legal work of one of Philadelphia's most respected attorneys. Keir Bradford-Grey was attempting to communicate with an important witness to advise her personally that her deposition would be necessary in this litigation. Ms. Bradford-Grey is a highly experienced attorney who has lived and worked in Philadelphia for more than two decades. Her representation of Mr. Kelly is simply the latest effort in her ongoing mission to help the most vulnerable citizens of our region. Defense counsel, on the other hand, do not live or work in Philadelphia and have only very recently begun to represent the City in connection with civil rights claims. Their request for a stay (recently denied in part by the Court) is positioned as a first step to attempting to have the claim dismissed for some supposed misconduct on the part of Plaintiff's counsel. Again, the only source of information about the alleged misconduct is from Ernestine Williams herself. Also, there can be no claim of prejudice because Ms. Williams has already testified and confirmed that she will not recant her trial testimony implicating Mr. Kelly.

The present request for leave to conduct discovery arises in a very different context. The possibility of misconduct by defense counsel is supported by the existence of an audio-video recording. This body-cam video was produced in discovery, but in light of the scorched-earth campaign upon which defense counsel has embarked, the implications of the body-cam video merit further examination. What was said before the Philadelphia Police Officers offered to "leave information out" of their police report?

The following passage is excerpted from a letter sent to defense counsel on August 24, 2026, inviting constructive discussion about these issues:

> **That brings us to the concern raised by the BWC.**
>
> After Ms. Williams called the police, defense counsel had an extended conversation with the responding officers. During that conversation, defense counsel discussed the lawsuit, Plaintiff's exoneration, Plaintiff's request for monetary damages, and the effect of the lawsuit on the reputation of the officers. Counsel is certainly entitled to defend her clients and disagree with Plaintiff's claims. That is not the issue.
>
> The concern is the setting in which that discussion occurred. These were officers from the same police department that is being sued in this case, and they were responding to a complaint made by a witness about defense counsel and the investigator.
>
> More importantly, the BWC captures Officer Christopher Schlegel asking defense counsel, in substance, whether there was anything she wanted left out of the report. NK DEF 008077, at 10:55-11:12.
>
> **That is the part of the recording that concerns us most.**
>
> An officer responding to a witness's complaint in active litigation asked counsel for one of the parties whether something should be left out of the police report. The recording does not show defense counsel telling the officer that the report should be complete, accurate, and independent. Instead, the conversation continues, with defense counsel discussing the facts and circumstances of the case. The recording then fades out.
>
> We do not know what was said after the recording fades. We do not know whether anything else was discussed about the report or about Ms. Williams. We are not going to speculate about what may have occurred. But the fact that we do not know is precisely why we believe this needs to be addressed.
>
> We also know that information Ms. Williams provided to the officers does not appear in the resulting police report. Her statements that defense counsel and the investigator were "banging on her door" and "harassing her like they want to do something to" her do not appear to be included. Nor does the exchange concerning her allegation that they were "breaking into her house." That would be concerning under any circumstances. It is considerably more concerning when viewed together with the BWC recording of an officer asking defense counsel what should be left out of the report.
>
> The BWC also captures Officer Rush saying that he did not want his name included in the report. NK DEF 008077, at 11:30-11:39. He appears to have been the only officer who continued recording while the conversation with defense counsel and the investigator continued. The other officers had stopped recording approximately seven minutes earlier.
>
> We do not know why the other officers stopped recording. We do not know why Officer Rush did not want his name in the report. We do not know

> what was said after the BWC recording fades. And we do not know whether there were any other discussions concerning how the encounter, Ms. Williams's allegations, or the resulting report should be characterized. Those are questions raised by the recording itself. They are not accusations based simply upon Ms. Williams's account.

A true and correct copy of the August 24, 2026, letter is attached as Exhibit "A". Rather than accepting the Plaintiff's offer to address these two interactions with Ernestine Williams in some form of compromise, the Defendants responded with a letter that not only doubled down on the assertions of Plaintiff's misconduct, but flatly denied that anything about their own interaction could be construed as improper:

> Your discussion of the responding officers' report-writing practices and BWC protocols is irrelevant to the issues in this case. The responding officer is not a party to this litigation, and Ms. Galbraith did not represent that officer at the scene. The purported concerns raised in your letter regarding how a non-party officer who responded to a call for service has no bearing on the claims or defenses in this case and Plaintiff cannot convert internal police administration matters into a merits dispute through correspondence.

A true and correct copy of the Defendants' September 2, 2026, letter is attached as Exhibit "B". The tone and content of the Defendants' letter make clear that, despite Plaintiff's effort to resolve this particular dispute without court intervention, Defendants will not relent from their dispute on this issue. Based on that decision by Defendants, it will be necessary for the Plaintiff to obtain full information[2] about the incident, all of defense counsel's communications with Ms. Williams prior to her deposition and what was and was not recorded by police after they arrived on the scene. It is clear that Defendants will oppose this discovery, and that is the reason for the Plaintiff's present motion.

---

[2] The documented lack of credibility regarding Ernestine Williams' statements and testimony makes it impossible to limit Plaintiff's inquiry to just Ms. Williams' testimony. Discovery requests for, among other things, all notes and documents in the Philadelphia Police Department's possession which relate to the incident, depositions of police officers and the defense attorney involved will almost certainly be required to obtain a full understanding of what occurred.

When a party moves for leave to conduct discovery and the opposing party objects on grounds of irrelevance, Third Circuit district courts apply a well-established burden-shifting framework. The party seeking discovery bears the initial burden of proving the relevance of the requested information. *Trask v. Olin Corp.*, 298 F.R.D. 244 (W.D. Pa. 2014); *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23 (E.D. Pa. 2016). This burden requires the moving party to demonstrate a logical connection between the information sought and the claims or defenses at issue — a general allegation of relevance is insufficient. In the present case, the discovery in question is relevant because (a) Ms. Williams is potentially the most important witness for the defense and (b) the body-cam video suggests, on its face, that information has been left out of the "official" information regarding the interaction(s) between defense counsel and Ms. Williams.

CONCLUSION

For the reasons set forth above, the Plaintiff respectfully requests that this Honorable Court enter the attached form of Order granting the Plaintiff leave to conduct discovery regarding defense counsel's interactions with witness Ernestine Williams.

Respectfully submitted,

MARRONE LAW FIRM

By: /s/Michael D. Pomerantz

Pa. Attorney ID No. 83415
Michael D. Pomerantz, Esquire
Pa. Attorney ID No. 83415
200 South Broad, Ste. 610
Philadelphia, PA. 19102
(215) 732-6700 – Phone
(215) 732-7660 – Fax
mpomerantz@marronelaw.com
Counsel for Plaintiff

Date: September 9, 2026

**IN THE UNITED STATES DICTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES KELLY,<br>Plaintiff,<br>v.<br>WALTER HOFFNER, *et al.*,<br>Defendants. | CIVIL ACTION<br>NO. 24-cv-06701-JFM |

CERTIFICATION OF COUNSEL

I hereby certify that I uploaded a true and correct copy of the Plaintiff's Motion for Leave to Conduct Discovery Regarding Defense Counsel Contacts with Witness Ernestine Williams to the Court's ECF system where it is available for all interested parties to review.

I further certify that counsel have attempted to meet and confer regarding the within discovery dispute as evidenced by the exchange of letters attached to the Plaintiff's Motion as Exhibits "A" and "B".

MARRONE LAW FIRM

By: /s/Michael D. Pomerantz

Pa. Attorney ID No. 83415
Michael D. Pomerantz, Esquire
Pa. Attorney ID No. 83415
200 South Broad, Ste. 610
Philadelphia, PA. 19102
(215) 732-6700 – Phone
(215) 732-7660 – Fax
mpomerantz@marronelaw.com
Counsel for Plaintiff

Date: September 9, 2026

# EXHIBIT "A"

MARRONE
LAW FIRM, LLC
T:215-732-6700 | F: 215-732-7660
www.MarroneLaw.com
Offices in PA | NJ | NY

200 S. Broad Street, Suite 610, Philadelphia, PA 19102

**Joseph M. Marrone**
Admitted in PA | NJ | NY
**Brian M. Marchese**
Admitted in PA | NJ
**Keir Bradford-Grey**
Admitted in PA
**Emily B. Barkann**
Admitted in PA
**Michael D. Pomerantz**
Admitted in PA | NJ
**Christopher M. Marrone**
(Of Counsel)

August 24, 2026

***Via Email to All Counsel of Record:***
Shneur Z. Nathan / Avi T. Kamionski / Brian Wilson / Kimberly Mann /
Jami L. Galbraith / Natalie Adeeyo / Ephraim Siff
**Nathan & Kamionski LLP**
575 South Charles Street, Suite 402
Baltimore, MD 21201

**RE: James Kelly v. City of Phila., et al.**
**U.S.D.C. for the Eastern District of PA, Docket number: 2:24-cv-06701-JFM**

Dear Counsel:

I am writing because I believe we need to address the competing allegations concerning Ms. Ernestine Williams and, more importantly, the concerns raised by the body-worn camera footage of the interaction between you and the responding police officers. I am willing to discuss a reasonable way to resolve these issues and move the case forward. However, I do not think we can do that by overlooking what is plainly captured on the recording. The interaction raises legitimate concerns about the handling of Ms. Williams's complaint, the preparation of the police report, and the discussion between defense counsel and officers from the same police department that is a defendant in this case.

Let me be clear about our position concerning the allegations against Plaintiff's counsel. Plaintiff's counsel did not threaten Ms. Williams, did not threaten her daughter, did not suggest that either of them would be harmed, and did not attempt to get Ms. Williams to change, abandon, or recant any prior statement. The purpose of the contact was to determine whether Ms. Williams would appear for a deposition and whether a date could be arranged. There is no factual basis for the suggestion that Plaintiff's counsel attempted to coerce or intimidate her. We therefore cannot accept or agree with that characterization, and we ask that it not continue to be advanced.

At the same time, Ms. Williams made allegations concerning her contact with defense counsel and the private investigator. We are not saying those allegations are true, nor are we asking you to accept them as true. But she made the allegations, she reported them to the police, and they were captured on the officers' body-worn cameras.

Ms. Williams told the responding officers that defense counsel and the investigator had been at her home earlier that morning "banging on her door" and "harassing her like they want to do something to" her. NK DEF 008076, at 1:11-1:28. Despite defense counsel's introduction as an attorney for the City of Philadelphia, Ms. Williams continued making these accusations to responding officers after stating that counsel was "not no attorney." *Id*. at 2:11-2:17. She also told the officers that she did not know them, identified defense counsel and the investigator, and pointed them out in the vehicle outside her residence.

The BWC also captures an exchange in which the private investigator asked whether Ms. Williams had said that they were "breaking into her house," to which an officer responded, "Yeah." NK DEF 008076, at 3:42-3:49; NK DEF 008077, at 4:27-4:31.

Again, we are not adopting Ms. Williams's allegations as fact. They may be accurate, they may not be, and her credibility can be evaluated through discovery. The point is that these were allegations made against defense counsel and the investigator and reported directly to the police. They should therefore have been documented accurately and independently.

**That brings us to the concern raised by the BWC.**

After Ms. Williams called the police, defense counsel had an extended conversation with the responding officers. During that conversation, defense counsel discussed the lawsuit, Plaintiff's exoneration, Plaintiff's request for monetary damages, and the effect of the lawsuit on the reputation of the officers. Counsel is certainly entitled to defend her clients and disagree with Plaintiff's claims. That is not the issue.

The concern is the setting in which that discussion occurred. These were officers from the same police department that is being sued in this case, and they were responding to a complaint made by a witness about defense counsel and the investigator.

More importantly, the BWC captures Officer Christopher Schlegel asking defense counsel, in substance, whether there was anything she wanted left out of the report. NK DEF 008077, at 10:55-11:12.

**That is the part of the recording that concerns us most.**

An officer responding to a witness's complaint in active litigation asked counsel for one of the parties whether something should be left out of the police report. The recording does not show defense counsel telling the officer that the report should be complete, accurate, and independent. Instead, the conversation continues, with defense counsel discussing the facts and circumstances of the case. The recording then fades out.

We do not know what was said after the recording fades. We do not know whether anything else was discussed about the report or about Ms. Williams. We are not going to speculate about what may have occurred. But the fact that we do not know is precisely why we believe this needs to be addressed.

We also know that information Ms. Williams provided to the officers does not appear in the resulting police report. Her statements that defense counsel and the investigator were "banging on her door" and "harassing her like they want to do something to" her do not appear to be included. Nor does the exchange concerning her allegation that they were "breaking into her house." That would be concerning under any circumstances. It is considerably more concerning when viewed together with the BWC recording of an officer asking defense counsel what should be left out of the report.

The BWC also captures Officer Rush saying that he did not want his name included in the report. NK DEF 008077, at 11:30-11:39. He appears to have been the only officer who continued recording while the conversation with defense counsel and the investigator continued. The other officers had stopped recording approximately seven minutes earlier.

We do not know why the other officers stopped recording. We do not know why Officer Rush did not want his name in the report. We do not know what was said after the BWC recording fades. And we do not know whether there were any other discussions concerning how the encounter, Ms. Williams's allegations, or the resulting report should be characterized. Those are questions raised by the recording itself. They are not accusations based simply upon Ms. Williams's account.

**That distinction matters.**

If Defendants intend to rely upon Ms. Williams's allegations to accuse Plaintiff or Plaintiff's counsel of threatening, intimidating, or coercing her, then the circumstances surrounding the police response to Ms. Williams's own allegations against defense counsel and the investigator must also be examined.

We are not suggesting that Ms. Williams's allegations against defense counsel are true. We are saying that she made them, the police were called, the allegations were captured on BWC, and the resulting report apparently does not contain them. At the same time, the BWC captures an officer asking defense counsel what should be left out of the report, and defense counsel does not appear to object to that question or direct the officer to prepare a complete and accurate report.

That presents a serious concern about the integrity of the process and, at a minimum, an appearance of impropriety that we believe needs to be addressed.

We do not believe the appropriate response is for either side to simply trade accusations. We are prepared to address the allegations made against Plaintiff's counsel based upon the evidence. We expect the same approach to be taken with respect to what is captured on the BWC concerning defense counsel and the responding officers.

Our position concerning Plaintiff's counsel is not changing. Plaintiff's counsel did not threaten, intimidate, coerce, or improperly influence Ms. Williams. There is no factual basis for that accusation, and we will not concede it simply because Ms. Williams has made the allegation.

At the same time, we are not asking you to concede that Ms. Williams's allegations against defense counsel or the investigator are true. Her credibility can and should be tested through the evidence. What we are asking is that the circumstances surrounding those allegations, and what happened after she made them, be treated with the same seriousness as the allegations being made against Plaintiff's counsel.

We are willing to have a constructive discussion about how to resolve these issues and move the case forward. We are not, however, willing to simply disregard what the BWC shows, particularly the officer's question about what should be left out of the report and the apparent omission from the report of allegations Ms. Williams made directly to the police.

Please let me know when you are available to discuss this.

Regards,

/s/ *Joseph M. Marrone, Jr.*

Joseph M. Marrone, Jr.

# EXHIBIT "B"

NATHAN & KAMIONSKI LLP

**MATTHEW HOFF**
**Partner**
mhoff@nklawllp.com
T: (410) 630-4753
F: (410) 705-4379

September 2, 2026

**VIA EMAIL**

Joseph M. Marrone, Jr., Esq.
Marrone Law Firm, LLC
200 S. Broad Street, Suite 610
Philadelphia, PA 19102

**Re:** *James Kelly v. City of Philadelphia, et al.*
U.S.D.C. E.D. Pa., No. 2:24-cv-06701-JFM

Dear Mr. Marrone:

We write in response to your August 24, 2026 letter concerning the body-worn camera ("BWC") footage and Ms. Ernestine Williams. We have reviewed your letter and disagree with its characterizations of the record and any claim that there are "competing allegations concerning Ms. Williams." Importantly, your letter omits material facts and appears as an attempt to undermine the credibility of Ms. Williams to lessen the impact of her testimony.

What your letter ignores is Ms. Williams's sworn deposition testimony. She testified that it was Plaintiff's attorney, Keir Bradford-Grey, and another person that came to her home and intimidated her. When defense counsel later arrived to serve her with a deposition subpoena, Ms. Williams explained that she was initially upset and called the police because she believed whoever came to her home previously had returned to harass her again. This testimony was given under oath and directly undermines the false narrative your letter attempts to construct. It also provides the necessary context for Ms. Williams's statements to the responding officers as captured on their BWC—context that your letter also fails to address.

The police responded to Ms. Williams's call, captured the interaction on body-worn camera, and the footage was promptly produced to Plaintiff in discovery. Plaintiff therefore had the footage and the opportunity to examine it in connection with the relevant events before Ms. Williams's deposition on July 23, 2026. The BWC production was complete and timely, it does not support the insinuations in your letter, and it does not establish misconduct by defense counsel or any Defendant.

NATHAN & KAMIONSKI LLP

Ms. Williams also testified that Plaintiff attempted to persuade her to recant her trial testimony. Those efforts did not succeed. While Plaintiff may be unhappy with Ms. Williams's testimony, which continues to inculpate Plaintiff, the current effort by Plaintiff to deflect attention from Ms. Williams's sworn testimony by recasting the BWC interaction as a separate controversy will not succeed either.

Your discussion of the responding officers' report-writing practices and BWC protocols is irrelevant to the issues in this case. The responding officer is not a party to this litigation, and Ms. Galbraith did not represent that officer at the scene. The purported concerns raised in your letter regarding how a non-party officer who responded to a call for service has no bearing on the claims or defenses in this case and Plaintiff cannot convert internal police administration matters into a merits dispute through correspondence.

Given Ms. Williams's deposition testimony regarding this incident, it is clear that she was initially confused at the time of her initial interaction with Ms. Galbraith and the responding officers. The officers apparently recognized her confusion, which Ms. Williams corroborated during her deposition. That recognition does not corroborate Plaintiff's accusations, undermine Defendants' defenses, or create a discovery issue. The time for Plaintiff to clarify with Ms. Williams about anything that Plaintiff believes may have occurred outside of the BWC footage was at her deposition. That Plaintiff made the strategic decision not to inquire of Ms. Williams at her deposition about the BWC footage, which was available to all parties, does not now provide Plaintiff a license to substitute his speculative interpretation of the events.

We remain open to discussing next steps regarding discovery into any improper influence on Ms. Williams. Nothing in this letter shall be construed as a waiver of any right, claim, defense, objection, or privilege available to Defendants or their counsel, all of which are expressly reserved.

Sincerely,

*/s/ Matthew Hoff*

Matthew Hoff
Nathan & Kamionski LLP
575 S. Charles Street, Suite 402
Baltimore, Maryland 21201